# SUPREME COURT,

---

REUBEN KENT, PLAINTIFF IN ERROR, vs. R. F. LYON, GUARDIAN OF A. M. LOTT, DEFENDANT IN ERROR.

Where a man makes a deed of gift of slaves or other property, which as against creditors is conceded to be void, and dies in possession of the property granted, it is assets in the hands of his administrator, and the deed of gift, in reference to the creditors, is to be considered as if it never had been made.

If the fraudulent donee has gone into possession of the property in the life time of the donor, he is not liable to the donor's representatives either for the property or its value, but is responsible to the creditors for the value.

Error to the Circuit Court of Jackson County.

A sufficient statement of the case will be found in the opinion of the Court.

*Yonge* for Plaintiff in Error.

*Campbell* for Defendant in Error.

ANDERSON, *Chief Justice*, delivered the opinion of the Court.

This was a case of a claim interposed under the statute, by the defendant in error, to a negro slave called Jenny, who had been levied on to satisfy an execution in favor of the plaintiff in error against George R. Williams, administrator of Jesse Lott, deceased. The cause was tried at the Fall Term, 1850, of the Circuit Court for Jackson County.

The slave was in the possession of Lott at the time of his

death, and passed with other personal property into the hands of Williams, the administrator, and passed from him to the possession of the Sheriff.

At the trial of the claim, the claimant relied upon a deed executed by Jesse Lott in his life time, by which he had conveyed to A. M. Lott, his daughter, the negro in question, and also upon a judgment which the claimant, in behalf of his ward, had obtained in trover against Williams for the value of the same slave.

The deed from Lott to his daughter seems to have been conceded on all hands to have been fraudulent as to creditors. At all events, there is sufficient evidence on the record to show it was so. But the defendant in error alleging that it was good between the parties to it, and their representatives, contended that therefore the property was not assets in the hands of the administrator, and as a consequence not liable to satisfy the execution.

His Honor in the Court below sustained this position of the defendant in error, and charged the jury as follows :— " If you are of opinion that Jenny is embraced in the deed " executed by Jesse Lott to his daughter, and is the one " upon whom the execution in this case is levied, you will " find her not subject to the execution." A verdict was rendered for the claimant, in accordance with this instruction.

The plaintiff in error excepted to the charge, and the case is thus presented to our consideration, involving this inquiry : If a donor, after having made a conveyance of his personal property, which is fraudulent as to his creditors, dies in possession of the property, and it goes into the hands of his adminstrator, is it assets for the payment of his debts?

There is some apparent conflict among the authorities upon this question, but we think they are easily recon-

ciled by adverting to the principles of law which regulate and adjust the respective rights of the parties to this suit, and of the administrator of Jesse Lott.

Our statute of January 28th, 1823, which is a re-enactment of the statute of 13th Elizabeth, provides, that all conveyances executed with intent to delay and defraud creditors, shall be " deemed, held, adjudged and taken to " be utterly void, frustrate, and of none effect," as against such creditors. Th. Dig., 215. On the other hand, the principle is clear that a fraudulent conveyance is good between the parties and their representatives. Hawes vs. Leader, Cro. Jac., 270. In that case the intestate made a grant of his goods to B., by fraud between him and B., to cheat the creditors, and he kept possession of the goods and died. B. then sued the administrator for the goods, and he pleaded this covin and fraud, and the statute of 13 Eliz.; but on demurrer, the plea was held bad, and judgment was rendered for the plaintiff, on the ground among others, that the deed was void only as against creditors, but that it remained good as against the party himself and his representatives.

These two principles are illustrated by the effect given to the fraudulent conveyance when tendered as evidence on the trial respectively of the two classes of conflicting claims to which we have referred.

When the contest is between a creditor and the fraudulent donee or grantee, the conveyance upon which the latter relies, if tendered as evidence, is, under the statute, " deemed, held, adjudged and taken to be utterly void, " frustrate and of none effect" as to the creditor. The title of the donee necessarily fails, for want of evidence to support it, and the creditor prevails, after having shown pre-existing title. But where the contest is between the donee and the representatives of the donor, and the donee

tenders his fraudulent conveyance, the representative is estopped from impeaching the deed of his testator or intestate—there is no party to the suit against whom the deed is "frustrate and of none effect," and the donee in his action at law must necessarily prevail.

The case now before the Court is precisely the one first supposed.

Kent having obtained judgment and execution against Williams, the administrator of Lott, levies his execution upon a negro woman of which Lott had died possessed, and which was found in the possession of the administrator. A claim is interposed, under the statute, by the guardian of the fraudulent donee, and to support this claim he relies mainly upon the fraudulent conveyance from Lott to his daughter. The statute having declared in effect that this deed, as against Kent, should be adjudged utterly void, the Court erred in instructing the jury that it was conclusive evidence of Anna Maria Lott's title. In regard to Kent's claim, it was a nullity, and it should have been so adjudged.

It will be found, we think, that the point decided, in every case referred to in the argument, turns upon the distinction we have here made as to the effect of the fraudulent conveyance, when tendered as evidence in the two classes of controversies.

Before we proceed to the examination of the several cases, we will advert to one of the general rules deduced from them, as a further illustration of our meaning.

The fraudulent donee who goes into possession during the life time of the donor, when he attempts to repel the effect of this evidence by the exhibition of his fraudulent deed, he is at once arrested by the exclusion of this deed as being a nullity, in regard to the party with whom he is contending. He is without evidence of his authority to

intermeddle with the goods of the intestate, and necessarily becomes liable as executor of his own wrong.

The case of Backhouse's Admr. vs. Jett's Admr, *et al*, was that of a gift of slaves and other property by a father to a son, consummated by delivery in the life time of the father. Chief Justice Marshall, on a bill filed by the creditor's of the father against the donee, decided that the slaves were not assets in the hands of the administrator, but that the donee was responsible for their value to the creditors. These conclusions are in consistency with the rule we have laid down and other well settled principles. The property fraudulently conveyed was not assets, because, having passed out of the possession of the donor in his life time, his administrator, as such, could not be charged by the creditors—having no possession himself as administrator and being debarred by the policy of the law from acquiring possession by impeaching the deed of his intestate. These general conclusions were not affected by the accidental circumstance that in this case the donee and the administrator were the same person.

The property was not held to be assets, but the defendant, as fraudulent donee, was held to account to the creditors for its value.

The case of Osborne vs. Moss, 7 T. R. 161, is a mere affirmation of the point settled, in the case of Hawes vs. Leader, already referred to. The principle decided is, that a grantee under a deed, fraudulent as to creditors, may nevertheless recover of the administrator of the grantor, and it is in obvious consistency with the rule.

The case of Rawles vs. Graham, 4 Monroe, 120, is a reiteration of the principle already quoted from 2 Saunders, and approved in Backhouse vs. Jett, to wit, that a fraudulent grantee is responsible to creditors as executor

*de son tort*, for what he received in the life time of the donor.

The case of Bethell vs. Stanhope, Cro. Eliz., 810, was that of a suit by a creditor against an executor *de son tort* who pleaded no assets.

It was found upon special verdict, that the testator was possessed of divers goods, and by covin, to defraud his creditors, made a gift of them to his daughter, with a condition that, upon the payment of £20, it should be void, and died.

The defendant intermeddled with the goods, and afterwards the daughter, by this gift, took the goods, and after that, administration was committed to the defendant.

The question was, whether these goods should be assets in his hands. It was adjudged that they were, as he had intermeddled with them after the death of the intestate; but it was remarked by the Court that if the goods had been taken in the life time of the intestate, they would not be assets until recovered.

The case of Shears vs. Rogers, 3 B. & Ad., 362, fully establishes all the conclusions at which we have arrived from a consideration of the general principles involved in this case. It was an action of debt against an executor, on bond given to plaintiff by John Morgan, deceased. Plea, *plene administravit praeter* certain goods—replication, assets *ultra*, upon which issue was joined.

The evidence showed a fraudulent conveyance by the testator of certain household property, he continuing in possession until his death. After his death, the executor took possession.

It will be perceived that this case, in all its essential parts, is precisely the same as the one before the Court. There was judgment for the plaintiff, and several of the Justices delivered opinions.

Lord Tentenden, C. J., said: " The authorities show that
" whenever a man makes a gift of goods which is fraudu-
" lent and void as against creditors, and dies, he is consid-
" ered to have died in full possession, with respect to the
" claim of the creditors, and the *goods are assets in the*
" *hands of his Executor.* It is impossible to say here that
" the lease was not assets, for the defendant had it in his
" possession."

Littledale, J., said : " I am of opinion the lease was as-
" sets. The assignment was void as soon as the creditors
" claimed to treat it as such, though not until then."

Taunton, J., after referring to the insolvent circumstan-
ces of the testator, says : " The assignment is utterly void
" and frustrate against creditors, and the case is to be con-
" sidered as if it had never been executed. The intestate
" therefore died possessed of the lease, and it was assets in
" the hands of the Executor."

Patterson, J., concurring in the opinion of the other
Justices, says : " As the statute says that the fraudulent
" deed shall be utterly void and frustrate ; and as the lease
" was in the hands of the testator at the time of his death,
" it passed to the Executor, and was assets in his hands."

The judgment here made and the opinion of the several
Judges, completely covers every point in the case now un-
der consideration.

The rights of creditors are fully asserted in this decision,
more clearly and perhaps more broadly than in some of
the older cases to which we have referred, but not more
so, we think, than a consistent and a salutary construction
of the statute requires. We conclude, then, in reference
to the case before us, and in language warranted by the
opinions just quoted, that because the deed from Lott to
his daughter was fraudulent and void as against creditors,
the slave, Jenny, remained the property of Lott, so far as

Lott's creditors were concerned, and was clearly assets in the hands of the Administrator, and that the deed of gift is to be considered, in reference to creditors, as if it had never been executed.

The first error assigned is therefore sustained. The second error assigned is, that the Court erred in charging that the judgment in the case of R. F. Lyon, Guardian of A. M. Lott vs. George R. Williams, [action of trover,] the record of which suit is in evidence, showed that Jenny was not assets, and was such estoppel as would compel the defendant in this suit and plaintiff in *fieri facias* to pursue the property in other modes.

This assignment is therefore sustained. The judgment in this case will be set aside, and the case remanded to the Court below, a *venire de novo* awarded, and on the trial of the right of property, the jury will be instructed in accordance with the foregoing opinion.